IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>TINA M. WAGNER,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td>CIVIL NO.: WDQ-12-3581</td></tr>
<tr><td>SCOTT T. GIBSON, et al.,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

Tina M. Wagner sued Scott T. Gibson and Harford County,
Maryland (collectively, the "Defendants") in the Circuit Court
for Harford County, Maryland, for civil rights violations and
other claims. On December 5, 2012, the Defendants removed the
action to this Court. Pending is the Defendants' motion to
dismiss the amended complaint.[1] For the following reasons, the
motion will be granted in part and denied in part.

---

[1] The Defendants' motion to dismiss the original complaint will
be denied as moot.

I.  Background[2]

From 1990 to 2002, Wagner's husband Robert Wagner was a member of the Harford County, Maryland Council. ECF No. 13 ¶ 7. From 2002 to 2006, he was Council President. *Id.* In 2005, David R. Craig became a candidate for Harford County Executive. *Id.* ¶¶ 8, 10. Robert Wagner publicly supported Craig's opponent Lucie Snodgrass, which "engendered animosity" from Craig. *Id.* ¶¶ 10-11, 13. Craig was chosen by a majority of the Council and was appointed to the position. *Id.* ¶ 12.

In October 2004, Harford County's Treasury Department hired Tina Wagner as a Cashier Development Trainee. ECF No. 13 ¶ 28. In February 2006, Wagner was promoted to Cashier I. *Id.* In August 2006, Wagner was promoted to Cashier II. *Id.*

In 2010, Robert Wagner ran against Craig in the Republican primary for Craig's second term. ECF No. 13 ¶¶ 16, 17. During the campaign, County employees were "encouraged by intimidation" to support Craig. *Id.* ¶ 18.[3] Wagner supported her husband by displaying bumper stickers on her car and attending campaign

---

[2] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] For example, County employees were instructed to attend political functions in support of Craig and were sent to polling places to show support for Craig. ECF No. 13 ¶ 19.

events. *Id.* ¶ 24. In July 2010, a County employee approached Wagner at a campaign booth at the County Farm Fair and "asked if she was afraid to be there, given that she worked for the County." *Id.* Robert Wagner lost the primary, and Craig told him, "don't worry about Tina [Wagner's wife]." *Id.* ¶ 27. Allegedly, Craig made the statement to "let[] [Robert] Wagner know that he was not going to forget about Mr. Wagner's campaign conduct." *Id.*

In June 2011, Tina Wagner's job in the County Treasury Department was reclassified to "Accounting Clerk II." ECF No. 13 ¶ 31. On or about August 24, 2011, the County posted a job vacancy for an Accounting Technician I in Harford Transit under Debra Westermeyer. *Id.* ¶ 33.[4] On September 1, 2011, Wagner applied for the Accounting Technician I job. ECF No. 13 ¶ 35. On September 9, 2011, Wagner emailed Westermeyer to ask what questions she should expect during the interview. *Id.* ¶ 37. Later that day, Westermeyer sent Wagner questions that had been asked during the interview for Westermeyer's current job. *Id.* ¶ 38. Westermeyer also emailed the questions to Jennifer Lewis, who supervised the other candidate for the job. *Id.* ¶ 46. At

---

[4] In January 2011, Westermeyer had been promoted from a job in the Department of Treasury to a job in Harford Transit. ECF No. 13 ¶ 30. Westermeyer and Wagner had become acquainted while working in the Department of Treasury. *Id.* ¶ 33.

Wagner's request, Lewis helped Wagner to prepare her resume. *Id.* ¶¶ 47, 49.

Harford County does not regulate or proscribe supervisors' assistance to candidates before the candidates' formal interviews. ECF No. 13 ¶ 39. There are no policies regulating the conduct of interviews. *Id.* No member of Harford County management or the Department of Human Resources told Westermeyer that she could not assist candidates. *Id.* ¶¶ 40, 41. Similarly, Wagner did not violate any written or unwritten personnel policies, ethical rules, or regulations by asking Westermeyer what kind of questions might be asked in the interview. *Id.* ¶¶ 43, 44.

On September 14, 2011, Wagner interviewed for the job and referred to her prepared notes when answering questions. ECF No. 13 ¶¶ 52, 53. The Human Resources representative at the interview told Scott T. Gibson, the Director of Human Resources, that Wagner had looked at notes during the interview. *Id.* ¶¶ 54, 3. Gibson referred the matter to a County investigator, who "interrogated" Wagner, Westermeyer, and Lewis. *Id.* ¶¶ 55, 56. Gibson "reported to" Craig that he intended to fire Wagner, "expressly for the purpose of bragging to Mr. Craig that he was going to terminate the wife of Mr. Craig's political rival." *Id.* ¶ 57.

The Harford County Code requires proof of "just cause" before disciplining or discharging an employee. *Id.* ¶ 59. Gibson purportedly fired Wagner for (1) "incompetency, incapacity or inefficiency in performance of duties," (2) "violation of law, official rules, regulations, written policies or written procedures," (3) "negligence in performing duties," and (4) "conduct unbecoming an employee of the county." *Id.* ¶ 58 (internal quotation marks omitted). Wagner alleges that her termination "was motivated by political spite and retribution" and was factually unsupported. *Id.*[5] The County also terminated Westermeyer and Lewis. *Id.* ¶ 61.

Wagner, Westermeyer, and Lewis appealed their terminations to the Personnel Advisory Board ("PAB") of Harford County. *Id.* ¶ 64. The PAB conducted an evidentiary hearing, during which Gibson "publicly and falsely" accused Wagner of "unethical conduct, dishonesty in the interview process, and the violation of the Personnel Code." *Id.* The PAB reversed the terminations and held that "no disciplinary action" should be taken against Wagner. *Id.* ¶ 65 (internal quotation marks omitted).

---

[5] Gibson also "threatened" Wagner by "report[ing] the situation" to the County Ethics Board. ECF No. 13 ¶ 60. The report was "made with malice" and "with the intent to disparage" Wagner. *Id.*

The County "opposed" unemployment benefits for all three women, and "represented" to the State Department of Licensing and Labor Regulation (the "SDLLR") that Wagner had violated the County Personnel Code. *Id.* ¶ 62.

On October 31, 2012, Wagner sued the Defendants in the

Circuit Court for Harford County, Maryland.  ECF No. 2.  On

December 5, 2012, the Defendants removed the action to this

Court.  ECF No. 1.  On December 12, 2012, the Defendants moved

to dismiss.  ECF No. 7.  On January 3, 2013, Wagner amended the

complaint.[6]  ECF No. 13.  On January 14, 2013, the Defendants

moved to dismiss the amended complaint for failure to state a

claim.  ECF No. 14-1.  On January 31, 2013, Wagner opposed the

Defendants' motion.  ECF No. 15.  On February 15, 2013, the

Defendants replied.  ECF No. 16.

---

[6] The amended complaint pleads 19 causes of action:

- Defamation, against Harford County (Count 1) and Gibson (Count 2);
- Invasion of Privacy/False Light, against Gibson (Count 3) and  Harford County (Count 4);
- Violation of 42 U.S.C. § 1983 (Substantive Due Process) against Harford County (Count 5) and Gibson (Count 7);
- Violation of 42 U.S.C. § 1983 (Procedural Due Process), against Harford County (Count 6) and Gibson (Count 8);
- Violation of the First Amendment, against Harford County (Count 9) and Gibson (Count 10);
- Violation of the Maryland Declaration of Rights (Substantive Due Process), against Harford County (Count 11) and Gibson (Count 13);
- Violation of the Maryland Declaration of Rights (Procedural Due Process), against Harford County (Count 12) and Gibson (Count 14);
- Violation of Maryland Declaration of Rights Article 40 ("Free Speech"), against Harford County (Count 15) and Gibson (Count 16);
- Respondeat Superior(Substantive Due Process), against Harford County;
- Respondeat Superior (Procedural Due Process), against Harford County; and
- Injunctive Relief, against all Defendants.

II. Analysis

A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must

7

not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. Defendants' Motion to Dismiss

    1. Defamation and False Light/Invasion of Privacy Claims (Counts 1-4)

        i.   Claims Against Harford County (Counts 1 and 4)

The Defendants argue that the claims for defamation and false light/invasion of privacy against Harford County should be dismissed because the County is immune from liability. ECF No. 14-1 at 7. Wagner contends that immunity does not protect Harford County from liability based on Gibson's actions because they were not committed in his governmental capacity. ECF No. 15 at 2.

Under Maryland law, municipalities are immune from common law tort suits when acting in a governmental capacity. *Nam v. Montgomery Cnty.*, 732 A.2d 356, 362 (Md. Ct. Spec. App. 1999). A municipality acting in a private or proprietary capacity is liable for its own tortious conduct and has respondeat superior liability for the tortious conduct of its employees. *DiPino v. Davis*, 729 A.3d 354, 369-70 (Md. 1999). Wagner argues that

Gibson was not acting in a governmental capacity when he defamed her and invaded her privacy. ECF No. 15 at 4. However, Gibson was acting within the scope of his employment--as Director of Human Resources--when he terminated Wagner and made statements in related employment proceedings. An employee's intentional tort committed within the scope of his employment does not deprive the County of immunity.[7] Accordingly, Harford County is immune from liability for any tortious conduct by Gibson in his governmental capacity.[8]

Wagner further contends that the County is a proper party because the Local Government Tort Claims Act (the "LGTCA"), Md. Code Ann., Courts and Judicial Proceedings, § 5-301 *et seq.*, imposes liability on the County for its employee Gibson's tortious activity. ECF No. 15 at 5-6. Although the LGTCA imposes liability on a local government for any judgment against its employee for *damages* resulting from tortious acts committed within the scope of employment, "[n]owhere in the Act . . . is there a waiver of immunity so that the governmental entity is

---

[7] *See Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 234 (4th Cir. 2002) (County was immune from a claim based on a police officer's intentional tort); *Vincent v. Prince George's Cnty.*, 157 F. Supp. 2d 588, 594-95 (D. Md. 2001) (same).

[8] Wagner apparently concedes that Gibson acted within the scope of his employment by arguing that the doctrine of respondeat superior applies. ECF No. 15 at 5; *see Beasley v. Kelly*, No. DKC 10-0049, 2010 WL 3221848, at *3 n.2 (D. Md. Aug. 13, 2010).

9

subject to being made a party to an action based upon its
employee's or agent's tortious acts." *Nam*, 732 A.2d at 362.

Thus, the Defendants' motion to dismiss Counts 1 and 4 will
be granted.

ii. Claims Against Gibson (Counts 2 and 3)

To state a claim for defamation, a plaintiff must allege
that: (1) the defendant made a defamatory statement to a third
person, (2) the statement was false, (3) the defendant was
legally at fault in making the statement, and (4) the plaintiff
suffered harm. *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432,
448 (Md. 2009). A statement is defamatory if it "tends to
expose a person to public scorn, hatred, contempt or ridicule."
*Id.* (internal quotation marks omitted). Maryland courts
recognize a distinction between defamation *per se* and defamation
*per quod*. *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F.
Supp. 2d 837, 843 (D. Md. 2005). A statement that "adversely
affects an employee's fitness for the proper conduct of [her]
business" or "impute[s] to [her] some incapacity or lack of due
qualification to fill the position" is defamation *per se*. *See*
*Samuels v. Tschechtelin*, 763 A.2d 209, 245 (Md. Ct. Spec. App.
2000) (internal quotation marks omitted). For a statement that
is defamatory *per se*, the "injurious character is a self-evident
fact." *M&S Furniture Sales Co. v. Edward J. De Bartolo Corp.*,
241 A.2d 126, 128 (Md. 1968).

10

The Defendants argue that Wagner has not plausibly alleged

a claim for defamation because the amended complaint fails to

identify any false statements. ECF No. 14-1 at 8-9. Wagner has

plausibly alleged three instances of defamation: Gibson

"report[ed] the situation [her referring to her notes during an

interview] to the Ethics Board", "represented" to the SDLLR that

Wagner was "guilty of misconduct," and accused Wagner of

"unethical conduct, dishonesty in the interview process, and the

violations of the Personnel Code." ECF No. 13 ¶¶ 60, 62, 64.[9]

Gibson's statements--which he made to third parties--concerned

Wagner's alleged "incompetency" and professional misconduct.

*Id.* ¶ 58. As these statements imputed incapacity or lack of due

qualifications to Wagner, she has sufficiently pled that

_____

[9] Gibson accused Wagner of violating four provisions of the
Harford County Code: (1) "incompetency, incapacity or
inefficiency in performance of duties;" (2) "violation of law,
official rules, regulations, written policies or written
procedures;" (3) "negligence in performing duties;" and (4)
"conduct unbecoming an employee of the county." ECF No. 13 ¶
58.

Wagner's allegations are distinguishable from the
insufficient defamation pleadings the Defendants rely on in
*Brown v. Ferguson Enterprises, Inc.*, No. CCB-12-1817, 2012 WL
6185310, at *3 (D. Md. Dec. 11, 2012). In *Brown*, the plaintiffs
alleged that a former employer had made false accusations to the
plaintiffs' potential employers. *Id.* The allegations failed to
identify the speakers or describe the statements. *Id.* Here,
Wagner identifies Gibson as the speaker and three parties to
whom Gibson published statements. ECF No. 13 ¶¶ 60, 62, 64.
Also, the amended complaint sufficiently describes Gibson's
statements supporting a plausible defamation claim. ECF No. 13
¶¶ 58, 60, 62, 64 (alleging Gibson said that Wagner was guilty
of misconduct, and accused her of violating certain County Code
provisions, unethical conduct, and dishonesty).

Gibson's statements are defamatory *per se*. Wagner has also pled that the statements alleging her misconduct were false. ECF No. 13 ¶¶ 67-81.[10]

To state a claim for defamation in Maryland, the plaintiff must also allege that the defendant was legally at fault, and the plaintiff suffered harm. *Piscatelli v. Van Smith*, 35 A.2d 1140, 1147 (Md. 2012). Fault may be based on either negligence or actual malice. *Samuels*, 763 A.2d at 242. A statement is made with malice if it is made "either with reckless disregard for its truth or with actual knowledge of its falsity." *Id*. Wagner alleges that Gibson made the false statements "with malice, with the intent to disparage" Wagner, and there "were no facts to support" Wagner's termination on the basis of misconduct. ECF No. 13 ¶¶ 58, 60. If the statement is defamation *per se* and the plaintiff demonstrates actual malice, damages are presumed. *S. Volkswagen*, 357 F. Supp. 2d at 843. Wagner's allegations that Gibson published false statements about her professional incapacity, with actual malice, state a defamation claim.

To state a claim for false light/invasion of privacy, the plaintiff must allege that:

---

[10] Wagner alleges that there was "no basis for the accusation of a violation of any ethical rule or regulation." ECF No. 13 ¶ 60.

> (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light would be highly offensive to a reasonable person, and (3) the defendant knew of or recklessly disregarded the falsity of the publicized matter and the false light in which the Plaintiff would be placed.[11]

A claim for false light "may not stand unless the claim also meets the standards for defamation." *Crowley v. Fox Broad. Co.*, 851 F. Supp. 700, 704 (D. Md. 1994).

The publicity requirement of a false light claim is more demanding than that for defamation. *See Robinson v. Vitro Corp.*, 620 F. Supp. 1066, 1070 (D. Md. 1985). Publicity requires disclosure beyond a single person or a small group of persons. *Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 354 (D. Md. 2012). Because Wagner alleges that Gibson published the defamatory statements in a public hearing at the PAB,[12] she has sufficiently pled publicity. It is also plausible that a reasonable person would consider a false accusation of "incompetency," "violation of law," "negligence in performing duties," and "conduct unbecoming an employee," ECF No. 13 ¶ 58,

---

[11] *Ross v. Cecil Cnty. Dep't of Soc. Servs.*, 878 F. Supp. 2d 606, 624 (D. Md. 2012) (internal quotation marks omitted) (*citing Ostrzenski v. Seigel*, 177 F.3d 245, 252 (4th Cir. 1999)).

[12] ECF No. 13 ¶ 64. It is unclear whether the representations made to the Ethics Board and the SDLLR were public disclosures or statements made only to a small group of people. At this stage, the amended complaint plausibly alleges publicity for these statements as well.

to be highly offensive.  Thus, Wagner has stated a claim for false light invasion of privacy.

The Defendants argue that Gibson has an absolute privilege for statements made at the PAB evidentiary hearing because the hearing was "adjudicatory."  ECF No. 14-1 at 10.  A party or witness who makes a defamatory statement in a quasi-judicial proceeding is protected by absolute privilege.  *Norman v. Borison*, 17 A.3d 697, 709 (Md. 2011).  In determining whether a witness in an administrative proceeding is absolutely privileged, the court must examine: "(1) the nature of the public function of the proceeding and (2) the adequacy of the procedural safeguards."[13]  The Defendants have failed to demonstrate that the PAB evidentiary hearing is so comparable to a judicial proceeding that absolute immunity should be extended to Gibson's testimony.[14]

The Defendants also contend that, by requesting a public hearing, Wagner consented to the statements made there.  ECF No. 14-1 at 10.  A party who consents to a publication that she

---

[13] *Gersh v. Ambrose*, 434 A.2d 547, 552 (Md. 1981) (holding that absolute privilege did not apply to witness in hearing before Baltimore City Community Relations Commission because the hearing neither advanced a sufficiently compelling interest nor provided suitable procedural safeguards).

[14] *Gersh*, 434 A.2d at 551 (holding a Commission hearing did not have adequate procedural safeguards because the record did not indicate the safeguards which are present in judicial proceedings).

14

knows or has reason to know may be defamatory cannot prevail on a claim for defamation.[15] However, it is unclear whether Wagner requested or consented to a public hearing. ECF No. 15 at 9 n.9. Thus, dismissal of this claim based on Wagner's consent would be premature.[16]

Thus, the Defendants' motion to dismiss Counts 2 and 3 will be denied.

2. Section 1983 Claims (Counts 5-10)

Wagner alleges that, by terminating her without due process in retaliation for her political support of her husband, the Defendants violated her substantive due process, procedural due process, and First Amendment rights. ECF No. 13 at 16-23. Section 1983 provides a remedy against any person who, acting under color of law, deprives another of constitutional rights. 42 U.S.C. § 1983. It "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted). The Defendants argue that Wagner has failed to adequately plead a constitutional violation. ECF No. 14-1 at 12. They

_____

[15] *See Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 316 (Md. Ct. Spec. App. 1995); *McDermott v. Hughley*, 561 A.2d 1038, 1046 (Md. 1989).

[16] *See McDermott*, 561 A.2d at 1046 (whether consent was given or whether the plaintiff had reason to know the statement might be defamatory was properly reserved for the jury's determination).

alternatively argue that the County cannot be liable for Gibson's constitutional violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and Gibson is entitled to qualified immunity. ECF No 14-1 at 19, 17.

i. Substantive Due Process Claims (Counts 5 and 7)

Substantive due process protects individuals from arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). To establish a substantive due process violation, a plaintiff must allege: (1) that she had property or a property interest; (2) of which the state deprived her; and (3) the state's action "falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Ruttenberg v. Jones*, 283 F. App'x 121, 128 (4th Cir. 2008); *see also Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995).

An employee with a legitimate claim of entitlement to continued employment has a property interest in her job. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). An employee has a protected property interest in public employment when "contractual or statutory provisions guarantee continued employment." *Prince v. Bridges*, 537 F.2d 1269, 1271 (4th Cir. 1976). Under the Harford County Code, the County must prove "just cause" in discharging an employee. ECF No. 13 ¶ 59 (*citing* Harford Co. (Md.) Code, § 38-4(B)). Thus, Wagner had a

16

protected property interest in continued employment with the County.[17]

Substantive due process only protects against "state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (internal quotation marks omitted). Substantive due process is an absolute check on government actions that is "warranted only whe[n] *no process* could cure the deficiencies" in that action. *Front Royal & Warren Cnty. Indus. Park Corp. v. Front Royal*, 135 F.3d 275, 287-88 (4th Cir. 1998).

Although the Defendants asserted a non-arbitrary reason for Wagner's termination,[18] the amended complaint alleges that the decision was "motivated by political spite and retribution." ECF No. 13 ¶ 58. Wagner asserts that Gibson "reported" his plan to terminate Wagner to Craig, "for the purpose of bragging to

---

[17] *See Christian v. Cecil Cnty.*, 817 F. Supp. 1279, 1284 (D. Md. 1993) (plaintiffs had a property interest in county employment when the County Code provided for termination only for specified reasons).

[18] Defendants assert that Wagner was fired because she received questions in advance of an interview for a new position with the County and used notes based on those questions during the interview. ECF No. 14-1 at 13.

17

Mr. Craig that he was going to terminate the wife of Mr. Craig's political rival." ECF No. 13 ¶ 57.

Wagner has plausibly alleged that Gibson arbitrarily and irrationally deprived her of a property interest.

          ii. Procedural Due Process Claims (Counts 6 and 8)

Wagner also alleges that the Defendants violated her right to procedural due process. ECF No. 13 at 20-1. To state a claim for a procedural due process violation, a plaintiff must show: "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (*quoting Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011)). Due process requires that an individual be given an opportunity for a hearing before she is deprived of a significant property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The pretermination hearing "need not be elaborate," but must provide notice and an opportunity to respond. *Id.* at 545-46. "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.* at 546. A public employee with a protected property interest in continued employment must be given notice

18

and an opportunity to respond before termination, even when post-termination administrative procedures are afforded.[19]

Wagner alleges that Gibson terminated her after an interrogation with the County investigator and before "providing her a meaningful opportunity to defend herself." ECF No. 13 at 10, 11, 18.[20] Wagner appealed her termination to the PAB, which conducted an evidentiary hearing and reversed the termination. ECF No. 13 ¶¶ 64, 65. Thus, Wagner has adequately pled that she did not receive a constitutionally adequate hearing before her termination in violation of her procedural due process rights.

> iii. First Amendment Retaliation Claims[21] (Counts 9 and
>
> 10)

---

[19] *See Loudermill*, 470 U.S. at 544 (holding that employee had procedural due process claim because of the lack of pre-termination hearing, even when employee was reinstated based on post-deprivation proceedings); *Linton v. Frederick Cnty. Bd. Of Cnty. Comm'rs*, 964 F.2d 1436, 1439 (4th Cir. 1992)(finding that County must provide employee with notice and an opportunity to present his side of the story before termination even though the County also provides post-termination administrative hearings and appeals).

[20] It is unclear whether the County investigator's alleged "interrogation" of Wagner could be considered a constitutionally adequate pre-termination hearing. *See Dennison v. County of Frederick*, 921 F.2d 50, 56 (4th Cir. 1990) (initial review meeting at which employee is advised of his probation was sufficient).

[21] Although the amended complaint is unclear, it appears to allege a violation of Wagner's First Amendment rights under § 1983 and the Maryland Declaration of Rights. To the extent that Wagner wishes to allege First Amendment claims not based on a

Wagner alleges that her First Amendment rights were violated when the Defendants terminated her in retaliation for her political support for her husband. ECF No. 13 ¶ 123. To show that a retaliatory employment action violated her free speech rights, a public employee must show that: (1) the employee spoke as a citizen on a matter of public concern; (2) the employee's interest in the expression "outweighed the employer's interest in providing effective and efficient services to the public"; and (3) there is a "sufficient causal nexus between the protected speech and the retaliatory employment action." *Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006). Speech that addresses issues "of social, political or other interest to the community" relates to a matter of public concern. *Urofsky v. Gilmore*, 216 F.3d. 401, 406 (4th Cir. 2000).

Wagner has plausibly pled a First Amendment retaliation claim under § 1983. Her political support of her husband and active participation in his campaign is speech on a matter of public concern.[22] As to the second element of this claim, the

theory of retaliation, these claims may be not raised in a motion for leave to amend.

[22] *See Jenkins v. Medford*, 119 F.3d 1156, 1169-70 (4th Cir. 1997) (holding that deputies engaged in speech involving a matter of public concern in actively campaigning for the sheriff's opponent).

Defendants have not shown that Harford County's interest in efficient and effective public service was affected by Wagner's political expression.[23] Wagner has also plausibly alleged a sufficient causal nexus between her termination and her public political support of her husband.[24]

> iv. *Monell* Liability Under § 1983 (Counts 5, 6, and 9)

The Defendants argue that, assuming Wagner has adequately pled that Gibson violated her due process and First Amendment rights, the § 1983 claims against Harford County should be dismissed because the violations were not "in furtherance of some municipal policy or custom." ECF No. 14-1 at 19. Wagner insists that her termination was an act and policy of Harford County because Gibson is an official with "final policymaking authority" over personnel matters; she contends this is the basis for the County's liability. ECF No. 13 ¶¶ 94-106.

A local government is liable under § 1983 when its "policy or custom" causes a constitutional injury. *Monell v. Dep't of*

---

[23] *See Jenkins*, 119 F.3d at 1170 ("[A]t this stage, there is *no* evidence of inefficiency or disruption in the workplace to balance against [the plaintiffs'] undeniable strong interest in engaging in political speech.").

[24] The amended complaint states that Gibson terminated her "for the purpose of retaliating against her for having supported her husband as a candidate," and Gibson was "motivated by political spite and retribution." ECF No. 13 ¶ 123, 58.

*Soc. Servs.*, 436 U.S. 658, 694 (1978). There is liability for a local government or municipality when a policy or custom is "fairly attributable" to the municipality and is the "moving force" being the violation. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). A policy or custom can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests a deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted).

For § 1983 liability, an official "must have the responsibility and authority to implement *final* municipal policy with respect to a particular course of action." *Riddick v. School Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000). A single decision by a municipal policymaker can impose liability on his local government. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (plurality opinion). Whether a municipality is liable under this theory depends on "whether the liability asserted is based on a municipal act and not simply on the independent act of a municipal employee, even though that employee may be acting as the final decisionmaker."

22

*Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 964-65 (4th Cir. 1995). Whether a local government official has final policymaking authority is a question of state law. *Lytle*, 326 F.3d at 472.

Wagner alleges that Gibson is an official with final policymaking authority because he "implement[s] County policy with respect to human resources matters, including termination of employment." ECF No. 13 ¶¶ 98(a). Authority to hire and fire employees alone is not sufficient; but responsibility for establishing County policy related to employment or personnel matters could establish a basis for final policymaking authority.[25] Although it may ultimately be found that Gibson is not a final policymaker for § 1983 liability, at this stage, Wagner has plausibly alleged that Gibson has the authority to implement County human resources policy, and his decision led to constitutional violations. Thus, Wagner's § 1983 claims against Harford County will not be dismissed on this basis.[26]

---

[25] *See Robinson v. Balog*, 160 F.3d 183, 190 (4th Cir. 1998) (explaining that the authority to make personnel decisions does not establish final policymaking authority, but the power to craft related municipal employment policy would qualify).

[26] Wagner also argues that Harford County is liable under § 1983 because it failed to properly train Gibson. ECF No. 13 ¶ 98(b). Other than this conclusionary statement, the amended complaint contains no facts about Gibson's allegedly inadequate training. Therefore, Wagner did not sufficiently plead § 1983 municipal liability based on inadequate training.

23

v.    Qualified Immunity (Counts 7, 8, and 10)

The Defendants argue that the § 1983 claims against Gibson in his personal capacity should be dismissed because he is entitled to qualified immunity.  ECF No. 14-1 at 17.

"Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity." *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009).  Because qualified immunity "is an immunity from suit rather than a mere defense to liability," the question of qualified immunity should be resolved "at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 244, 227 (1991).  To determine whether qualified immunity applies to a defendant's actions,

> [The court] must decide whether a constitutional right would have been violated on the facts alleged.  Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

*Id.* at 330-31 (*quoting Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003)).  In Maryland, a constitutional right becomes clearly established in three ways: (1) an authoritative decision by the United States Supreme Court; (2) an authoritative decision by the Fourth Circuit Court of Appeals; or (3) an authoritative decision by the Court of Appeals of Maryland. *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998).  A

24

constitutional right is clearly established "when its contours are sufficiently clear that a reasonable official could understand that what he is doing violates that right." *Ridpath*, 447 F.3d at 313 (internal quotation marks omitted).

As discussed above, Wagner has plausibly alleged that Gibson violated her due process and First Amendment rights. *See supra* Part II.B.2.i-iii. Wagner has also plausibly alleged that each of these rights was clearly established. Specifically, as a public employee who could only be terminated for good cause, Wagner had an established property interest in her continued employment. *See Prince v. Bridges*, 537 F.2d 1269, 1271 (4th Cir. 1976). She had a right to due process before being deprived of this interest. *Loudermill*, 470 U.S. at 542. Thus, it would be clear to a reasonable person that arbitrarily terminating her without prior notice and an opportunity to be heard would violate those rights. Similarly, a reasonable person would know that terminating her because she had spoken about a matter of public concern is a constitutional violation. At this stage, Gibson is not entitled to the defense of qualified immunity.[27]

---

[27] *Cf. Ridpath*, 447 F.3d at 318 (affirming denial of motion to dismiss free speech claim based on qualified immunity when effect on efficient operation of the workplace could not be shown at the time to outweigh plaintiff's interest in speech).

C.    Maryland Declaration of Rights Claims (Counts 11-16)

Due process claims under Article 24 of the Maryland Declaration of Rights are read *in pari materia* with Fourteenth Amendment due process claims. *Pickett v. Sears, Roebuck & Co.*, 775 A.2d 1219, 1224 (Md. 2001). Article 40 of the Maryland Declaration of Rights is read *in pari materia* with the First Amendment. *Nefedro v. Montgomery Cnty.*, 996 A.2d 850, 855 n.5 (Md. 2010). Because Wagner has sufficiently alleged claims under the Fourteenth and First Amendments, she has stated claims under Articles 24 and 40 of the Maryland Declaration of Rights.[28]

D.    Respondeat Superior Claims (Counts 17 and 18)

The Defendants argue that Wagner's claims against Harford County based on respondeat superior liability for substantive due process and procedural due process violations should be dismissed. ECF No. 14-1 at 19. Wagner agrees that respondeat superior does not apply to her § 1983 claims against the County. ECF No. 15 at 27.; *see supra* Part II.B.2.iv. However, Wagner contends that respondeat superior applies to the state constitutional violations. ECF No. 15 at 28. In Maryland, local government entities have respondeat superior liability for

---

[28] Similarly, the Defendants argue that Wagner's claim for injunctive relief in Count 19 should be dismissed because it relies on deficiently pled prior claims. ECF No. 14-1 at 20. Because Wagner has sufficiently pled claims for violations of her constitutional rights, her claim for injunctive relief will not be dismissed.

civil damages "resulting from State Constitutional violations committed by their agents and employees within the scope of the employment." *DiPino v. Davis*, 729 A.2d 354, 372 (Md. 1999). Thus, Wagner's claims against Harford County based on respondeat superior liability for Gibson's violations of the Maryland Declaration of rights will not be dismissed.

III. Conclusion

For the reasons stated above, the Defendants' motion to dismiss the amended complaint will be granted in part and denied in part.

_____9/3/13_____
Date

_____
William D. Quarles, Jr.
United States District Judge